**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
───────────────────────────────

**CERIOUS D. MCCRAY,**

**and**

**LYDIA R. MCCRAY,**                                    **15-CV-409A(Sr)**

                    **Plaintiffs,**

**v.**

**STATE OF NEW YORK,**
**et al.,**

                    **Defendants.**

───────────────────────────────

<u>**REPORT, RECOMMENDATION AND ORDER**</u>

         This case was referred to the undersigned by the Hon. Richard J. Arcara,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #31.


         Plaintiff Cerious McCray, an inmate in the custody of the New York State

Department Of Corrections and Community Supervision ("NYSDOCCS"), and his

mother, Lydia McCray, an employee of NYSDOCCS, commenced this action, *pro se*, by

filing a 119 page complaint (along with more than 240 pages of exhibits), naming more

than 30 defendants. Dkt. #15. As relevant to the pending motion to dismiss, Cerious

McCray alleges inadequate medical treatment following urethral stricture surgery

performed by defendant Dr. Angell at defendant Arnot Ogden Medical Center ("Arnot"),

on November 5, 2012. Dkt. #15. Cerious McCray returned to Arnot on November 21,

2012 due to bleeding and was examined in the emergency room by Dr. Dewar, who discharged him back to Elmira. Dkt. #15. Cerious McCray returned to Arnot through the emergency room on November 22, 2012, at which time Dr. Stewart performed a second surgical procedure to cauterize a blood vessel. Dkt. #15. On November 23, 2012, Cerious McCray received a blood transfusion at Arnot. Dkt. #15. Plaintiffs also complain that Lydia McCray was denied visitation with Cerious McCray at the Elmira Correctional Facility ("Elmira"), on December 4, 2012 and that they were unable to communicate with each other between November 5, 2012 and December 12, 2012. Dkt. #15.

Currently before the Court is a motion to dismiss by Arnot (Dkt. #24), and a motion to dismiss by defendants Alan H. Angell, S. Belloma, P. Braselmann, Paul Chappius, Jr., A. Cicconi, Kate Dewar, L. Gerard, P. Kwan, J. Seely, A. Stamps, D. Taft, M. Trabout and Wellman ("individual defendants"). Dkt. #30. For the reasons set forth below, it is recommended that Arnot's motion to dismiss be granted in part and the individual defendants' motion to dismiss be granted.

## DISCUSSION AND ANALYSIS

Dismissal Standard

To survive a motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* Plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S.at 679. While the factual allegations need not be detailed, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Evidentiary Standard

In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint or incorporated by reference in the complaint, and to matters of which judicial notice may be taken.'" *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999); *See also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). "Where a plaintiff has relied on the terms and effect of a document in drafting the complaint and that document is thus integral to the complaint," the district court may consider the contents of the document "even if it is not formally incorporated by reference." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (internal quotations omitted), *quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

When a party submits additional evidence in connection with a motion to dismiss, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment

under Rule 56 of the Federal Rules of Civil Procedure and afford all parties the opportunity to present supporting material. *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000). This requirement deters trial courts from engaging in fact finding when ruling on a motion to dismiss and ensures that when a trial judge considers evidence outside of the complaint, a plaintiff will have an opportunity to contest such evidence by submitting evidence that contraverts it. *Global Network Comms, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006), *cert. denied*, 558 U.S. 1100 (2009).

As set forth in the Federal Rules of Evidence, a court may take judicial notice of a fact that is not subject to reasonable dispute because it is generally known within it's territorial jurisdiction or because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed.R. Evid. 201(b). Courts routinely take judicial notice of documents filed in other cases and other courts, not for the truth of their contents, but to establish their existence and legal effect. *Delgado v. City of N.Y.*, 19 Civ. 6320, 2021 WL 2473817, at *2 (S.D.N.Y. June 17, 2021); *Belsito v. County of Erie,* 19-CV-215, 2019 WL 6292143, at *3 (W.D.N.Y. Nov. 25, 2019).

Courts also take judicial notice of public records that are required to be filed by law which are contained on a state website *See Reed Const. Data Inc. v. McGraw-Hill Cos., Inc.*, 638 Fed. App'x 43, 47 n.2 (2d Cir. 2016) (taking judicial notice of public records of business incorporation contained on the Georgia Secretary of State's website); *In Re Arcimoto Inc., Secs. Litig.*, 21-CV-2143, 2022 WL 17851834, at *5 (E.D.N.Y. Dec. 22, 2022) (taking judicial notice of statements contained in public

records filed with the Florida Division of Corporations); *J&J Sports Productions, Inc. v. Gomez*, 18-CV-5119, 2019 WL 4744229, at *5 (E.D.N.Y. Sept. 29, 2019) (taking judicial notice of entries in NYSDOS Corporation and Business Entity Database).

**Section 1983 Claims Against Arnot**

Plaintiffs' complaint alleges that Elmira entered into a contract with Arnot granting Arnot employees the right to provide medical services to prisoners. Dkt. #1, ¶ 44. The complaint further alleges that Dr. Angell was employed by Arnot and was also under contract with Elmira. Dkt. #1, ¶¶ 44-45 & 142. In it's screening order, the Court allowed the claims against Arnot to move forward based upon the allegation that Arnot was a private actor under contract with NYSDOCCS to provide medical services to NYSDOCCS' inmates. Dkt. #15, p.13, n.7.

Arnot moves to dismiss the § 1983 claims against it because it is not a state actor and was not acting under color of state law, and because the acts and/or omissions complained of would have been the responsibility of physicians, who are not employed by Arnot, but only maintain practice privileges at Arnot. Dkt. #24-4, pp.4-15. In support of its argument, Arnot submits affidavits detailing Arnot's corporate status, employment relationships with defendant physicians; division of responsibilities between defendant physicians and Arnot nurses; and the absence of a contract between Arnot and Elmira. Dkt. #24-1; Dkt. #24-2 & Dkt. #24-3.

Plaintiffs respond that it is inappropriate to consider information beyond the complaint and request an opportunity for discovery. Dkt. #40, p.3. Plaintiffs also

argue that Arnot bears legal responsibility for its failure to supervise Dr. Angell and for its discharge of Cerious McCray with internal bleeding. Dkt. #40, pp.6-7.

Arnot replies that this Court should consider the facts presented by affidavit because plaintiffs have been afforded a reasonable opportunity to respond. and reiterates that it is not responsible for alleged malpractice committed by a private physician with hospital privileges or any employees at Elmira. Dkt. #41-1, pp.3-9.

Plaintiffs reiterate that Arnot's affidavits are inadmissible at this juncture and request an opportunity to pursue discovery regarding Arnot's relationship with Elmira and Dr. Angell, who plaintiffs allege was under contract to provide medical care to prisoners when he treated Cerious McCray at Arnot, noting that Dr. Dewar, an Arnot emergency room physician, is represented by the New York State Attorney General. Dkt. #45, pp.6-11. Plaintiffs assert that Arnot is a state hospital and argue that it could be considered a state actor even if it is a private hospital. Dkt. #45, pp.11-18. Plaintiffs further argue that Arnot is vicariously liable because it should have known that Dr. Angell failed to obtain informed consent and committed malpractice when he caused and then failed to address Cerious McCray's internal bleeding. Dkt. #45, pp.20-27.

Arnot responds that plaintffs' assertions of a contractual relationship between it and Elmira are conclusory. Dkt. #46, ¶ 32.

A plaintiff proceeding pursuant to 42 U.S.C. § 1983 must allege that a right secured by the Constitution or laws of the United States was violated by a person

acting under the color of state law or a state actor. *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Public employees generally act under color of state law when acting in their official capacity or while exercising responsibilities pursuant to state law. *Id.* at 50. Thus, physicians employed by the state to provide medical services to state prison inmates act under color of state law and are considered state actors when providing medical treatment to inmates. *Id.* at 54-55. It is not determinative that the state employed the physician pursuant to a contractual arrangement that differs from public employment: "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in custody, and it does not deprive the State's prisoners of the means to vindicate their [constitutional] rights." *Id.* at 56. Therefore, a physician under contract to fulfill the state's obligation to provide essential medical care to incarcerated individuals also acts under color of state law. *Id.*

The Court takes judicial notice of the fact that Arnot is a not-for-profit medical facility. *See* https://www.arnothealth.org/arnot-ogden-medical-center (Arnot "is a not-for-profit . . . medical facility"); https://www.guidestar.org/profile/16-0743905 (Arnot "is a not-for-profit . . . medical facility"). "As a general rule, private hospitals do not act under the color of law for § 1983 purposes." *Sykes v. McPhillips*, 412 F. Supp.2d 197, 200 (N.D.N.Y. 2006) (internal quotation omitted)*; See Kia P. v. McIntyre*, 235 F.3d 749, 756 (2d Cir. 2000) ("The Hospital is owned and administered by a private corporation; it is not a state or municipal facility."), *cert. denied*, 534 U.S. 820 (2001); *See Johnson v. City of N.Y.*, 20-CV-3083, 2021 WL 4896477, at *9 (S.D.N.Y. Aug. 23, 2021) ("Although private hospitals are regulated by the state and required to obey state

laws, they are generally not proper § 1983 defendants because they do not act under color of state law.") (internal quotation omitted), *R&R adopted by* 2021 WL 4479384 (Sept. 30, 2021). Moreover, "the mere fact that an otherwise private institution receives public funding does not make it a state actor for purposes of constitutional claims." *Thomas v. Mohawk Valley Health Sys*., 2020 WL 6504634, at *6 (N.D.N.Y. Nov. 5, 2020) (internal quotation omitted). As a result, plaintiffs' allegation that Arnot is a participating hospital under a Medicare provider agreement is insufficient to render Arnot a state actor.

There are three exceptional circumstances that may confer state actor status upon a private hospital: (1) when there is a nexus or joint action between the state and the hospital; (2) when the hospital acts under state compulsion; or (3) when the hospital's provision of services constitutes a public function. *Parker v. Blackerby*, 368 F. Supp.3d 611, 624 (W.D.N.Y. 2019), *citing Sykes*, 412 F. Supp.2d at 200-01. For example, a private corporation can be considered to act under color of state law where it enters into contract with a municipality to provide medical services to incarcerated individuals. *See Sanchez v. Nassau Cty*., CV 17-7335, 2019 WL 2438652, at *9 (E.D.N.Y. Feb. 28, 2019), *R&R adopted by* 2019 WL 1253283 (March 18, 2019); *Sykes*, 412 F. Supp.2d at 204 n.1. However, the provision of medical care by a private hospital to an individual in custody on the same terms as the hospital would provide to the public at large will not satisfy the state action test. *Falls v. (Police Officer) Detective Michael Pitt*, 16-CV-8863, 2021 WL 1164185, at *50 (S.D.N.Y. Mar. 26, 2021); *Jones v. Pryor,* 2019 WL 498798, at *3 (N.D.N.Y. Feb. 8, 2019) (collecting cases).

The Court declines to consider Arnot's affidavits regarding the lack of a contractual relationship between Arnot and Elmira without affording plaintiffs the opportunity to obtain discovery regarding the relationship, if any, between and among Arnot, Elmira, Dr. Angell and Dr. Dewar. Thus, for purposes of this motion to dismiss, the Court accepts plaintiffs' assertion that Arnot is a state actor because it had a contractual obligation to provide medical services to Cerious McCray.

Even accepting that allegation, however, it is well settled that an employer is not generally liable for its employees' actions under the tort theory of respondeat superior in suits brought under § 1983. *Bedard v. Centurion of Vermont, LLC*, 5:20-CV-161, 2021 WL 4699245, at *3 (D. Vt. Aug. 27, 2021), *R&R adopted by* 2021 WL 4666331 (Oct. 7, 2021). "Like government employers, private employers are not responsible, under a theory of respondeat superior, for the constitutional torts of their employees." *Johnson*, 2021 WL 4896477, at *12. "This principle applies fully to hospitals - public or private - sued under § 1983 for the allegedly unconstitutional conduct of their employees." *Id.*

To hold a hospital liable under § 1983 for conduct committed by its employees, the plaintiff must show that action pursuant to an official policy caused the constitutional tort. *Id.; See Smith v. Benson*, 08-CV-485, 2016 WL 11817187, at *2 (W.D.N.Y. Mar. 21, 2016) *(*"Private employers are not liable under § 1983 for the constitutional torts of their employees unless the plaintiff proves that action pursuant to official policy of some nature caused a constitutional tort.")*, quoting Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (internal quotations

omitted), *cert. denied*, 502 U.S. 809 (1991); *See also, Rojas*, 924 F.2d at 409

(recognizing that although *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S.

658, 691 (1978), dealt with municipal employers, its rationale has been extended to

private businesses). In the instant case, plaintiffs have failed to plausibly allege any

hospital policy that caused plaintiff injury. Accordingly, it is recommended that plaintiffs'

§ 1983 cause of action be dismissed against Arnot.


### State Law Claims Against Arnot

Upon dismissal of the § 1983 claims, Arnot urges the Court to decline

supplemental jurisdiction over any state law claims. Dkt. #24-4, p.15. However, given

that the state law claims alleged against Arnot derive from a common nucleus of

operative facts as several of the federal claims that remain against other defendants in

this case, it is recommended that the Court exercise supplemental jurisdiction over the

state law claims at this time. *See Jones v. Nickens*, 961 F. Supp.2d 475, 496 (E.D.N.Y.

2013) (declining to dismiss state law claims against hospital defendants after dismissing

federal claims where state law claims against hospital defendants derived from a

common nucleus of operative fact as the federal claims remaining against other

defendants).


Therefore, pending discovery as to the relationship between Arnot and

Dr. Angell and Dr. Dewar, it is recommended that plaintiffs be permitted to proceed

against Arnot on a theory of vicarious liability for alleged malpractice based upon

plaintiffs' allegations that: (1) Dr. Angell failed to obtain informed consent from Cerious

McCray for the surgical procedure; (2) Dr. Angell failed to cauterize a blood vessel during surgery; (3) Dr. Angell and Dr. Dewar failed to diagnose and repair internal bleeding in a timely manner; (4) Dr. Angell and/or Dr. Dewar over-prescribed and/or other Arnot employees improperly administered Iron and/or Motrin and Tylenol to Cerious McCray. *See I.M. v. United States,* 362 F. Supp.3d 161, 198 (S.D.N.Y. 2019) ("Under the doctrine of respondeat superior, a hospital may be vicariously liable for the medical malpractice of physicians, nurses and other healthcare professionals who act in an employment or agency relationship to the hospital."); *Cf. Mirshah v. Obedian*, 158 N.Y.S.3d 226, 232 (2nd Dep't 2021) ("In general, under the doctrine of respondeat superior, a hospital may be held vicariously liable for the negligence or malpractice of its employees acting within the scope of employment, but not for negligent treatment provided by an independent physician."); *But See Salandy v. Bryk*, 55 A.D.3d 147, 153 (2nd Dep't 2008) ("the mere recording or witnessing of a consent by a hospital employee is a ministerial task that does not subject the hospital to liability.").

### EMERGENCY MEDICAL TREATMENT AND ACTIVE LABOR ACT ("EMTALA") CLAIMS

Plaintiffs' complaint alleges that medical staff at Arnot, including Dr. Angell and emergency room physician Dr. Dewar, were negligent and deliberately indifferent to Cerious McCray's medical condition when they transferred him from Arnot to the Elmira infirmary on November 21, 2012 without remedying his continued and excessive bleeding, in violation of 42 U.S.C. § 1395(dd)(a). Dkt. #1, ¶¶ 152-179. Upon his return to Elmira, plaintiff alleges that defendants continued to exhibit deliberate indifference to his continued excessive bleeding until November 22, 2012, when he was again

transported to Arnot and Dr. Stewart performed a second surgical procedure to cauterize a blood vessel. Dkt. #1, ¶¶ 180-198.

The individual defendants argue that EMTALA does not apply to them and that the EMTALA allegations are untimely. Dkt. #30-1, pp.9-11.

Plaintiffs respond that Cerious McCray provided a complaint[1] to the authorities at the Franklin Correctional Facility in October of 2014 for filing with the New York State Supreme Court, County of Chemung, and the envelope was received timely by the Chemung County Clerk on November 17, 2014. Dkt. #42, p.35. However, the Chemung County Clerk advised plaintiff that the New York State Supreme Court was the wrong forum and suggested that he should file his complaint with the New York Court of Claims.[2] Dkt. #42, p.35. Plaintiffs complain that this deliberate misrepresentation prevented the papers from being filed properly and caused the EMTALA statute of limitations to expire. Dkt. #42, p.35. Plaintiffs also argue that the individual defendants cannot assert the statute of limitations defense on behalf of Arnot. Dkt. #42, pp.35-36 & Dkt. #45, pp.44-45.

---

[1] Plaintiffs' provided the Court with a Summons with Notice to the Supreme Court of the State of New York, Chemung County, with attached complaint and supporting documentation, dated October 10, 2014. Dkt. #14, p.8.

[2] Plaintiffs provided that Court with a letter dated November 20, 2014 in which the Acting Chief Clerk for the Supreme and County Court of the State of New York, Chemung County, advised that it had received paperwork pertaining to a medical malpractice action against NYSDOCCS, *et al.*, but was returning it for filing with the New York Court of Claims. Dkt. #14-2, p.12.

Arnot replies that a defendant does not waive its right to assert an affirmative defense by failing to raise it in a pre-answer motion to dismiss and seeks to assert the statute of limitations defense along with the individual defendants so as to preserve judicial resources. Dkt. #46, pp.24-31.

The Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, was enacted in 1986 to prevent all hospitals that participate in the federal Medicare program from "patient dumping," which is the practice of refusing to provide emergency medical treatment to patients unable to pay, or transferring them before emergency conditions are stabilized. *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 792 (2d Cir. 1999). The statute imposes two primary obligations upon hospitals subject to the statute: (1) when an individual arrives at a hospital emergency room, the hospital must provide an appropriate medical screening examination to determine whether an emergency medical condition exists; and (2) if an emergency medical condition does exist, the hospital must stabilize the medical condition before transferring or discharging the patient. *Id., citing* 42 U.S.C. § 1395dd(a) & (b)(1)(A). EMTALA does not create a federal remedy for misdiagnosis or medical negligence, but imposes a legal duty for hospitals to provide emergency care to all. *Id.* at 792-93. The statute provides for "a civil action against the participating hospital," but requires such actions to be brought no more than two years after the date of the violation. 42 U.S.C. §§ 1395dd(d)(2)(A) & (C).

"Most courts that addressed the issue of whether EMTALA creates a private cause of action against individual physicians have ruled that it does not."

*Brenord v. Catholic Med. Ctr. of Brooklyn & Queens, Inc.,* 133 F. Supp.2d 179, 186 (E.D.N.Y. 2001), *citing Fisher v. New York Health & Hosps. Corp*., 989 F. Supp.444, 448 (E.D.N.Y. 1998) ("The text of the statute virtually precludes the implication of a private cause of action against physicians" and the "legislative history confirms that Congress intentionally limited the private action to claims against hospitals."). Accordingly, it is recommended that the EMTALA cause of action be dismissed against the individual defendants for failure to state a claim.

In addition, the Court agrees that plaintiffs' EMTALA claim is time barred. Cerious McCray alleges that he was transported to the emergency room at Arnot on November 21, 2012 and November 22, 2012, but his complaint was not filed until May 6, 2015, which is more than two years after the date of any alleged violation of Arnot's EMTALA obligations. While plaintiffs argue that the delay should be excused because Chemung County[3] failed to file a complaint asserting this cause of action in state court, the deadline set forth in the EMTALA statute has been determined to be a statute of repose which, in contrast to a statute of limitations, is not subject to equitable tolling. *See Amira v. Maimones Hosp*., 21-CV-3976, 2022 WL 18034533, at *13-14 (E.D.N.Y. Nov. 30, 2022) (collecting cases). Therefore, it is recommended that the motion to dismiss the EMTALA cause of action be granted as to all defendants, including Arnot.

_____

[3] Plaintiffs also argue that this Court improperly dismissed their claim of denial of access to the courts against the Chemung County defendants without affording them the opportunity to amend their complaint. Dkt. #42, p.35. Judge Arcara dismissed with prejudice plaintiffs' claim that the County defendants denied plaintiffs access to the courts when they returned plaintiffs' lawsuit to Cerious McCray with a letter recommending that plaintiffs file the lawsuit in the New York Court of Claims because the Chemung County defendants are protected by the Eleventh Amendment and absolute quasi-judicial immunity. Dkt. #15, pp.39-40.

*See Dos Santos v. Assurant, Inc*., 625 F.Supp.3d 121, 130 (S.D.N.Y. 2022) (recognizing district court's authority to dismiss a *pro se* cause of action *sua sponte* where the facts supporting the defense are set forth on the face of the complaint).

### CO Wellman

In its screening order, the Court allowed plaintiffs' claim that Lydia McCray was denied visitation with Cerious McCray to proceed against CO Wellman. Dkt. #15, p.30. Plaintiffs' complaint alleges that Lydia McCray arrived at Elmira on December 4, 2012 to visit Cerious McCray but did not clear the metal detector. Dkt. #1, ¶¶ 201-202. When Lydia McCray asked CO Wellman to use a hand scanner because she had many pins in her hair, he advised that he did not have a hand scanner. Dkt. #1, ¶¶ 201-202. Lydia McCray informed CO Wellman that she was a CO at the Fishkill Correctional Facility ("Fishkill"), prompting CO Wellman to ask for her letter of approval to visit an inmate. Dkt. #1,  ¶¶ 201-202.

When Lydia McCray advised that she did not have the lettre with her, CO Wellman advised that his supervisor required this document, prompting Lydia McCray to ask to speak to the supervisor or the Deputy of Security. Dkt. #1, ¶¶ 201-202. CO Wellman responded that no one was available and provided her with the fax number for Elmira so that she could call Fishkill and have them fax a copy. Dkt. #1, ¶¶ 201-202. Lydia McCray called Fishkill, but the Deputy of Security was not immediately available. Dkt. #1, ¶¶ 201-202. Lydia McCray alleges that she pleaded with CO Wellman that she had traveled five hours because she had not heard from her son since his first surgery a month prior and that he had been rushed back to the hospital twice since then after

suffering substantial blood loss. Dkt. #1, ¶¶ 201-202. CO Wellman advised Lydia

McCray that there were Corrections Officers from Fishkill at Elmira and she should think

about how they might respond if they saw her visiting an inmate. Dkt. #1, ¶¶ 201-202.

Lydia McCray subsequently advised the Deputy of Security at Fishkill of

the events at Elmira and was informed that CO Wellman had reported that Lydia

McCray was denied visitation because she did not comply with the rules for scanning

and became belligerent. Dkt. #1, ¶¶ 201-202. Lydia McCray was assured that Cerious

McCray would call her on the evening of December 5, 2012, but he was unable to call

until December 12, 2012 because Elmira had placed a block on Lydia McCray's

account. Dkt. #1, ¶¶ 201-202.

CO Wellman argues that inmates do not have a constitutional right to

visitation and that the denial of visitation in this instance was justified by Lydia McCray's

failure to clear the metal detector and failure to provide proper documentation. Dkt.

#30-1, pp.11-12.

Plaintiffs argue that Lydia McCray had permission from the Inspector

General to maintain her familial relationship with Cerious McCray. Dkt. #1, pp.27-28.

Plaintiffs complain that CO Wellman arbitrarily required Lydia McCray to produce

documentation that he was not authorized to demand and wrongfully refused to call a

supervisor who could easily have determined that Lydia McCray was allowed to visit

Cerious McCray. Dkt. #1, pp.27-28 & 37. Plaintiffs also argue that Lydia McCray should

have been afforded more than one chance to clear the metal detector. Dkt. #42, p.27.

-16-

CO Wellman replies that even if he violated regulations, such violation would not support a claim under 42 U.S.C. § 1983 because the denial of visitation on one occasion fails to rise to the level of a First Amendment violation and the facts do not plausibly allege malicious action. Dkt. #50, pp.4-5.

Plaintiffs reply that CO Wellman's requirement that Lydia McCray produce documentation was malicious. Dkt. #45, pp.33-34. Plaintiffs also argue that CO Wellman's reliance upon Lydia McCray's failure to clear the metal detector is disingenuous because she was willing to submit to a more intrusive hand wand procedure. Dkt. #45, pp.35-36.

In *Overton v. Bazzetta*, the United States Supreme Court recognized that "freedom of association is among the rights least compatible with incarceration," but otherwise declined to explore or define the right of association, including the right to maintain familial relationships, because the regulations at issue in that case bore a rational relation to legitimate penological interests. 539 U.S. 126, 131-32 (2003). The Court of Appeals for the Second Circuit similarly declined to recognize a First Amendment right to visitation between inmates and their families, determining that even assuming such a right, it "must be subject to reasonable restrictions on the time, place and manner of visits." *Mills v. Fischer*, 497 Fed. App'x 114, 116 (2d Cir. 2012), *cert. denied*, 568 U.S. 1170 (2013).

In *Mills*, the Court of Appeals determined that the denial of visitation on a single occasion by a prison guard who mistakenly applied a more stringent rule that was

not in itself unreasonable did not give rise to a constitutional claim. *Id.* at 117; *See also, Lopez v. Reynolds*, 998 F. Supp. 252, 259 (W.D.N.Y. 1997) ("A prison inmate does not have a viable § 1983 claim based solely on prison officials' failure to adhere to the requirements of prison regulations, directives or policy statements."). The court recognized, however, that "the intentional or malicious deprivation of visitation to a prisoner, even on one occasion, could rise to the level of a constitutional violation." *Mills,* 497 Fed. App'x at 116. Because plaintiffs "alleged only rudeness and not malice," the Court of Appeals determined that the complaint failed to state a plausible claim under the First Amendment. *Id.* at 117.

In the instant case, even assuming that CO Wellman erred in requiring Lydia McCray to produce a letter of approval before allowing her to visit Cerious McCray on December 4, 2012, plaintiffs have not plausibly alleged that CO Wellman's error was malicious. *See Al-Haj v. Singer,* No. 19-CV-3135, 2021 WL 4442854, at *4 (S.D.N.Y. Sept. 28, 2021) (dismissing complaint of denial of visit from siblings where complaint did not contain factual allegations of malicious intent or assert continuing problem)*; Malave v. Weir*, 3:16-cv-9, 2018 WL 500644, at *7 (D.Conn. Jan. 22, 2018) (finding that "there is no clearly established constitutional right of a prisoner or the prisoner's spouse against the suspension by prison officials of in-person visitation or telephone communications for a period as long as eight months."), *aff'd,* 750 Fed. App'x 65 (2d Cir. 2019). In total, plaintiffs allege one month elapsed between the prior visit and the visit that was denied, followed by eight days without telephone communication. As a result, it is recommended that the motion to dismiss be granted as to CO Wellman.

ADA

Plaintiff's complaint alleges that on December 20, 2012, while attempting to locate Cerious McCray to appear as a witness for a Tier III disciplinary hearing on behalf of Rakin Paulin, CO Stamp alerted "all areas" that Cerious McCray was missing, even though several porters informed CO Stamp that Cerious McCray was in the law library. Dkt. #1, ¶¶ 202-203. Cerious McCray alleges that Corrections Officers were aware that he was related to Rakin Paulin and willfully deprived them of the right to be free from association discrimination under the Americans with Disability Act of 1990 ("ADA"), "because they both were black, known complainers[,] and suffered from mental health disabilities." Dkt. #1, ¶¶ 204-205. Cerious McCray received a misbehavior report for remaining in the law library without being on the callout. Dkt. #1, ¶ 204. He alleges that the disciplinary hearing was scheduled for December 24, 2012 to prevent him from attending a medical callout and that the punishment imposed, *to wit*, 30 days keeplock, delayed his opportunity for transfer to a facility closer to his family and affected his ability to contact his family over the holidays, in violation of his right to be free from association discrimination under the ADA. Dkt. #1, ¶¶ 209 & 213. Cerious McCray also alleges that Nurse Seeley violated the ADA by feeding him pork and subjecting him to confinement in a filthy cell "because of his race . . . and because of his disabilities and in retribution for his protest activities." Dkt. #1-1, ¶ 219.

Although the screening order did not recognize a claim under the ADA or Rehabilitation Act, defendants argue that any such claim must be dismissed against all of the individual defendants because neither statute allows for claims against individuals. Dkt. #30-1, pp.8-9.

Plaintiffs respond that they are attempting to bring the ADA claims against the State, Elmira and Arnot Ogden Medical Center. Dkt. #42, p.32.

In as much as "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials," the Court recommends that any such claim be dismissed against the individual defendants. *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *See Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022), *citing Perros v. County of Nassau*, 238 F. Supp.3d 395, 402 n.3 (E.D.N.Y. 2017) ("[I]t is well-established that there is no individual liability under the ADA or the Rehabilitation Act, whether the individual is sued in their official or individual capacity.").

## **CONCLUSION**

For the reasons set forth above, it is recommended that any cause of action against Arnot pursuant to 42 U.S.C. § 1983 be dismissed; the EMTALA claim be dismissed; the denial of visitation claim against CO Wellman be dismissed; and any claim under the ADA or Rehabilitation Act be dismissed against the individual defendants.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report,

Recommendation and Order to the attorneys for the parties.


**SO ORDERED.**


**DATED:      Buffalo, New York**
**                October 24, 2023**

                                          *  s/ H. Kenneth Schroeder, Jr.*
                                          **H. KENNETH SCHROEDER, JR.**
                                          **United States Magistrate Judge**